## McBRIDE *v.* McBRIDE.

*(Supreme Court, Special Term, New York County.    April 1, 1889.)*

1. DIVORCE—A MENSA ET THORO—CRUELTY.
    Where the evidence shows that defendant, on frequent occasions, treated plaintiff, his wife, with violence and brutality, was often intoxicated, and at a time when she was soon to become a mother, frightened her almost into hysterics by threatening her with a poker, she is entitled to a decree of separation.

2. SAME—ISSUES FOR JURY.
    Defendant's counsel, in an action for separation, objected, upon the opening of the second jury trial, that some of the framed issues embraced acts not specified in the complaint; and, upon the court's suggesting that the only effect of such objection would be to delay the trial until the proper amendments could be had at special term, counsel stated that he did not wish to delay the trial, but still desired to make the objection. The trial then proceeded. He had made the same objection

at the first jury trial, which resulted in a disagreement, after which, and before the second trial, the issues were resettled on his own motion. *Held,* that defendant had no cause for complaint on the ground of surprise.

Action for separation, brought by Josephine M. McBride against Robert P. McBride.

*W. B. Cochrane* and *S. G. Adams,* for plaintiff.  *Preston Stevenson,* for defendant.

BARRETT, J.  This case exemplifies the inutility of a jury trial in actions for separation.   The framed issue is not whether the defendant has been guilty of cruel and inhuman conduct.   That is a conclusion which can only be reached by the court upon proof of specific acts; in fact, after hearing all the details of the marital inharmony.   Proof of a particular act of cruelty may be insufficient to justify a decree of separation.   The character, extent, and surroundings of the acts complained of must always be weighed.   It follows, therefore, that the court can scarcely be aided, much less concluded, by the answers of the jury to questions with regard to specific acts.   In actions for divorce *a vinculo,* a single act of adultery entitles the wronged party to a decree.   In actions for separation, however, when the jury has informed us that on a given day, at a particular place, the defendant committed a single act of violence upon the plaintiff, we have only commenced the inquiry.   The court must then ascertain whether the act was an isolated one, resulting from momentary and regretted ill temper, whether it was condoned or repeated, and the circumstances attending such repetition; and so on, until the conscience is satisfied that a case within the statute and under the principles which govern in such actions has been made out.   It follows, too, that negative answers to issues involving not only specific acts, but a characterization of those acts and the consequences, mental and physical, claimed to have resulted therefrom, cannot serve as a guide in determining what really occurred on the occasions covered by such issues.

In the case at bar, the jury have told us that on one occasion the defendant struck the plaintiff on the head and shoulder, and on another occasion used vile and abusive language to her.   They have also told us that on a specified occasion he did not use vile and abusive language, and "thereby cause her to have hysterics and prostrate her nervous system;" nor did he, on still another occasion, "shake the plaintiff with great violence, and throw her on the floor, so that she thereby became unconscious."   The jury may have been convinced that the defendant on these occasions did use vile and abusive language, and did throw the plaintiff on the floor, but may have been unable to say that he did these things "with great violence," or that she became unconscious from the act, or that she had hysterics, or that her nervous system was prostrated.   The affirmative verdict is perhaps insufficient, of itself, to justify a decree of separation, while the negative verdict would not warrant a dismissal of the complaint.   Accordingly, as suggested upon the hearing, we have been compelled to look at the entire case, and to determine upon all the evidence, whether the plaintiff is entitled to a separation.   It is certainly a close case, not in a moral but in a legal sense.   That the plaintiff suffered greatly from the defendant's peculiarities of temperament there can be no doubt.   That she was not treated with anything like that gentleness and consideration which, as an only child, she had been accustomed to, is equally clear.   The question, however, is, was there cruelty, as that term is defined in the law?   Whatever doubt I may have entertained upon that head, as a matter of first impression, has, upon reflection, been resolved in the plaintiff's favor.   My best judgment upon the whole case is, that drink was the main cause of all these marital infelicities.   The defendant, when entirely himself, was probably incapable of the harshness, rudeness, and shabby conduct, much less the downright cruelty, testified to by the plaintiff, and in

some particulars by her witnesses.    When, however, he was under the influence of stimulants, and that, unfortunately, was but too often, he was not himself, and he treated his wife in a manner which must be characterized, in a legal as well as a moral sense, as "cruel."    He undoubtedly struck her in September, 1884, and he also, in Jaunary, 1885, used vile and abusive language to her, as the jury have found.    This blow was, it is true, overlooked,. and, if the case rested upon that alone, the plaintiff would fail.    But that. blow was not all, and some of the subsequent occurrences were, to my mind,. far greater.    I confess to some doubt as to the occurrences in December, 1884,. covered by the third issue.    The defendant, I believe, used the language testified to by the plaintiff, and caused her great mental anguish—so great that, she seized a pistol, and threatened self-destruction.    The defendant, however, compelled her to desist, and to lay the pistol down.    My doubt is as to· what immediately followed; and, upon the whole, I am unable to find that the defendant then shook the plaintiff, and threw her upon the floor.    I agree with the jury, however, as to the use of bad language on the 1st of January, 1885.    The most serious occurrence, however, was that of the 8th of December, 1885.    On this occasion the defendant was clearly intoxicated, and he acted in a shameful manner.    His wife was then within two months of her confinement, and yet he refused her an inexpensive messenger service.    He· refused it in a brutal way, and frightened the plaintiff almost into hysterics by flourishing a poker, to emphasize his determination.    The evidence with, respect to this occurrence preponderates in the plaintiff's favor.    Her version is also sustained by the probabilities, and by what is conceded to have transpired.    Even the physician who was called in after this affair advised the· plaintiff to leave the defendant's house, and go where she could have quiet,— a most significant circumstance, as indicating the physician's judgment upon the effect of what had transpired, and also his solicitude for the future.    The· defendant, too, fully recognized his own misconduct, and he sought forgiveness and continued access to his wife upon a solemn pledge not to drink for· one year,—a pledge which shortly afterwards he deliberately and defiantly violated.    From this time on the defendant continued his harsh and inconsiderate course.    Doubtless he did not intend to kill' or even to injure the· plaintiff when he exposed the pistol in the latter part of December, 1885; but,. it was none the less cruel, recklessly to frighten a timid and nervous woman, who was about to become a mother.    The fact is, that, having already broken his pledge, and being once more under the influence of liquor, he had become as dangerous as when his wife returned to her father's house, to secure peace and quiet.    Again, in March, 1886, we find further unkindness, and that of' a mean and petty kind, namely, with regard to the employment of a nurse; and finally, during that month, throwing off all restraint, the defendant an-- nounced his deliberate intention of breaking his pledge and drinking when he· pleased.    In my judgment, the plaintiff was then justified in refusing longer to live with him, and the defendant's previous offenses were in law and in: fact revived.    His whole course has thus been subversive of the marital re-- lation, and such as to render the plaintiff's existence intolerable.    Drink was the key-note of all this inharmony and wretchedness; and it serves to clear the atmosphere of the case of any doubts engendered by looking at the charges in the light of ordinary human conduct.

The point is taken that some of the issues embrace acts not specified in the complaint.    These issues, however, were framed upon motion, and have been treated throughout as the equivalent of specifications in an amended complaint.    Upon the opening of the second jury trial, the defendant's counsel. objected to such of these issues as were not embraced within the specifications. of the complaint.    The learned judge who presided then informed the de-- fendant's counsel that the only effect of his objection on that head would be· to delay the trial and remit the parties to the special term for an amendment,

which would cover what was new in the framed issues.   Yet the defendant's counsel proceeded, stating that he did not wish to delay the trial, but still desired to make the objection.   Plainly, there was no surprise.   The same objection was taken on the first jury trial; and, after the disagreement and before the second trial, the issues were resettled upon the defendant's own motion.   As the cause was finally brought to trial before me upon the resettled issues, and upon all the evidence adduced before the jury in support of and against the plaintiff's charges as embraced within such issues, the pleadings must be conformed to the proofs, and judgment rendered accordingly, in favor of the plaintiff, with costs.